[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a decision of the Statewide Grievance Committee ("Committee") dated December 16, 1993, reprimanding the plaintiff, Woodward F. Lewis, for a violation of Rule 1.6 of the Rules of Professional Conduct.
This court has jurisdiction to hear this appeal, all the requirements of Sec. 27N of the Practice Book having been met, and the plaintiff F. Woodward Lewis is an aggrieved party.
The standard of proof applicable in determining whether an attorney has violated the code of professional responsibility is clear and convincing evidence. StatewideGrievance Committee v. Presnick, 18 Conn. App. 475, 477
(1989). However, the basic facts are not in dispute and neither party has taken substantial issue with the findings made by the reviewing committee of the Grievance Committee, after hearings on November 18, December 9, 1992 and February 19, 1993, and contained in its five page "proposed decision," undated, but adopted by the Grievance Committee on February 16, 1993. A summary of these facts follows:
The underlying facts are mostly undisputed. On October 31, 1990, Mr. and Mrs. Hewawasam (the grievants), without being represented by counsel, signed a contract to buy a new house to be built by Ricci Construction Co. The real estate broker was Ennis Realty and its agent was Steven Baldino. The contract provided that any deposit was to be made payable to the listing broker and placed in the broker's bank account. On November 1, 1990, Baldino, William Ricci of Ricci Construction Co. and the grievants met at the construction site and the grievants delivered a deposit check for $19,100 payable to Ricci. There is a difference of recollections as to who ordered the check made payable to the Riccis and to whom the check was handed by the grievants, but it ended up with Ricci who deposited it and subsequently used the proceeds without applying it to the construction of the projected CT Page 11573 house. In January or February of 1991, the grievants asked for their deposit back and learned that the money had been spent.
In March, 1991 the grievants consulted the plaintiff who filed a lawsuit against Mr. Ricci and Ricci Construction Co. A disagreement arose between the plaintiff and the grievants and they terminated his services as an attorney in the summer of 1991.
On or about August 8, 1991 the grievants filed a complaint against Mr. Baldino and Ennis Realty with the Central Connecticut Board of Realtors, Inc., based on the escrow clause of the contract. In December, 1991 grievants filed a grievance complaint against the plaintiff alleging malpractice. In the same month, the Realty Board issued findings against Baldino and Ennis Realty, who then obtained a rehearing of their case to be heard in March, 1992. In early March, Mr. Robert Ennis contacted the plaintiff, asking him to look at the August 8, 1991 complaint before the Realty Board and to tell the Board what the grievants told him about the deposit money.
The plaintiff, without contacting the grievants, wrote to Mr. Ennis on March 17, 1992, as follows:
 "During the course of my representation of Mr. and Mrs. Hewawasam on the contract for the purchase of Lot #2, William Road, Wallingford, Connecticut, neither Mr. or Mrs. Hewawasam ever mentioned that the $19,100.00 should be kept in escrow by the realty company. The facts given to me were that the check was made out to Ricci Construction Company and paid directly to it."
This communication was not accepted as evidence before the Realty Board, which re-affirmed its earlier decision.
On April 6, 1992, the grievants filed the present complaint with the Committee based on the letter of March 17, 1992. On Mary 21, 1992, the Committee dismissed the prior grievance filed by grievants in December, 1991.
Plaintiff claims that the information he disclosed in his March 17, 1992 letter about the grievants was not covered by CT Page 11574 his confidentiality obligations under Rule 1.6 since the information was not sufficiently confidential in nature so as to violate that rule; that in any event he had a right to reveal the information if he reasonably believed it was necessary in order to rectify a criminal or fraudulent act of the grievants in which Respondent's services had been used; that the Committee used the wrong standard in finding that plaintiff had a duty to conduct a further investigation and not make any disclosure until he had clear evidence of fraud; and that the procedure employed by the Statewide Grievance Committee under its Rule 7F violated his due process rights when the deciding vote for the decision was cast by a member who had not participated in the hearings.
An appeal from the Decision of the Statewide Grievance Committee to reprimand is authorized under Practice Book § 27N, which in subsection (f) sets forth the scope of review by the superior court. This court is required to affirm the decision of the Committee unless the court finds that substantial rights of the appellant have been prejudiced because the Committee's findings, inferences, conclusions or discussions fall into six listed categories under subsection (f). UnderPinsky v. Statewide Grievance Committee, 216 Conn. 228, 234
(1980) this court is limited to a review of the record to determine if the facts as found are supplied by the evidence in the record and whether the conclusions that follow are legally correct. Plaintiff claims in this appeal that the decision of the Committee violated constitutional and practice book rules, was made upon unlawful procedure, was effected (sic) by errors of law, and was erroneous accordance to the evidence, which claims fall generally under the scope of categories (1), (3), (4), and (5) of subsection (f) of § 27N.
Rule 1.6 of the Rules of Professional Conduct provides:
Rule 1.6 Confidentiality of Information
 (a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (a), (b), (c), and (d).
(b) A lawyer shall reveal such information to the CT Page 11575 extent the lawyer reasonably believes necessary to prevent the client from committing a criminal act that the lawyer believes is likely to result in death or substantial bodily harm.
 (c) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary to:
 (1) To prevent the client from committing a criminal act that the lawyer believes is likely to result in substantial injury to the financial interest or property of another;
 (2) Rectify the consequence of a client's criminal or fraudulent act in the commission of which the lawyer's services had been used.
 (d) A lawyer may reveal such information to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client.
The first claim of the Plaintiff — that his statements contained in the March 17, 1992 letter did not fall within Rule 1.6 is without merit. The information contained in the letter clearly related to Respondent's "representation" of the complainants and was communicated to him in confidence by the client. The Comment to the Rule notes that:
 "The Rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality Rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation whatever its source."
The second claim that Plaintiff had a right under (c)(2) of Rule 1.6 to reveal the information because he reasonably believed it necessary to rectify a fraudulent action of the grievants is not substantiated by the facts. Whether the CT Page 11576 grievants ever mentioned to him that the deposit was to be kept in escrow by the agent was not an element of fraud within the provision of (c)(2) since the action against the Riccis was based on the language of the real estate contract. That action was instituted by the Plaintiff as attorney for the grievants and if he had pleaded falsely based on the representation of the grievants, he would have been justified in revealing information intended to rectify a fraudulent act of the client under Paragraph (c)(2) of Rule 1.6. But plaintiff has not pointed to any fraudulent pleading or statement made in that action. A scrutiny of his complaint dated March 5, 1991 did not disclose any claim or representation to which his communication of March 17, 1992 was addressed. Moreover, he cannot reveal confidential information to rectify a fraud — which he reasonably believed to have been committed in grievants' subsequent action against the agent, since his services were not being used in that action.
Plaintiff's third claim, that the Committee used the wrong standard in suggesting that Plaintiff had a duty not to disclose any confidence until he had "clear evidence of fraud" is of no avail in light of our above conclusion that Plaintiff had no evidence of any fraud for which it was proper for him to rectify under Paragraph (c)(3) of Rule 1.6.
Lastly, Plaintiff attacks the procedure used by the Committee, as violative of his due process rights because "the deciding vote" for the decision was cast by a "member who had not participated in the hearing."
Plaintiff claims that when the two Committee members who heard the case could not agree on whether Plaintiff's disclosure was reasonable, they assigned the record to a lay person on the Committee who had not attended the hearings and who eventually cast the deciding vote without having an opportunity to assess the credibility of the witnesses. Plaintiff claims that this referral was done in derogation of his due process rights.
It appears from the record that after the Committee found probable cause against the Plaintiff on September 17, 1992, the matter was referred to a three member reviewing committee consisting of Attorney Diaga Osis, Attorney Steven F. Donahue and Mr. Ralph Murray, a lay member. Hearings were CT Page 11577 subsequently noticed for November 18 and December 9, 1992 and February 9, 1993. The two attorneys attended all three hearings and Mr. Murray who attended only the second hearing on December 9, 1992, subsequently resigned before casting a vote. The two attorneys had differing opinions, Attorney Donahue recommending a dismissal and Attorney Osis recommending a reprimand. At that point the Committee advised Ms. Caroline Wakefield, a lay member, that she would replace Mr. Murray on the panel to review the entire record and participate in the decision.
A proposed decision was issued by Attorney Osis, Attorney Donahue and Ms. Wakefield on November 26, 1993, recommending by a vote of two to one a reprimand of the Plaintiff. On December 16, 1993 the full committee considered the full record and the proposed decision, and with Attorney Osis, Attorney Donahue and Ms. Wakefield abstaining, voted unanimously to adopt the proposed decision and reprimand the plaintiff.
Rule 7F of the Rules of Procedure of the Statewide Grievance Committee, as amended May 21, 1992, and published in the Connecticut Law Journal, June 16, 1992, pp 1-7D provides:
 F. All determination of a reviewing committee shall be by an absolute majority vote and two members shall constitute a quorum. In the event of a tie vote, a member of the Statewide Grievance Committee shall be designated to review the entire record of the complaint and cast the deciding vote. All determinations of the Statewide Grievance Committee shall be by an absolute majority vote and seven members shall constitute a quorum.
Plaintiff does not claim that this rule was not followed but questions the fairness of the rule.
Participation in a decision by a member of a board based solely on his reading of the record has been sanctioned by our Supreme Court with respect to General Statutes § 4-179, the Uniform Administrative Procedure Act. Pet v. Dept. of HealthServices, 228 Conn. 651, 671 (1944). Plaintiff draws our attention to Justice Berdon's dissent in Pet supra which seems to support Plaintiff's claim that due process requires the presence of all committee members at the hearings. That CT Page 11578 dissent placed stress on the direct conflict of credibility involving direct charges of sexual misconduct as against the defendant doctor; in the present action, most of the facts are not disputed and credibility is not a major factor. Plaintiff had fourteen days to comment on the reviewing committee's recommendation to the Statewide Grievance Committee pursuant to Connecticut Practice Book § 27J(g). The full Committee reviewed the matter and voted to adopt the decision for reprimand. In this case, having two of the three Committee members present at the hearings and having a third read the full record and transcript, in consonance with a published rule of procedure, satisfactorily meets due process requirements.
We conclude that under the facts of this case, the decision of the Committee dated December 16, 1993, was not illegal or in abuse of its discretion or otherwise in violation of any of the categories set forth in Practice Book § 27N(f).
Appeal dismissed.
Wagner, J.